## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| DELESKI INSURANCE AGENCY, INC. and JERRY DELESKI, | Civil No. 13-1780 (JRT/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ALLSTATE INSURANCE COMPANY and DAVID HEWITT, | |
| Defendants. | |

Christopher M. Daniels and Joshua P. Brotemarkle, **DANIELS & KIBORT, PLLC**, 14255 Highway 55, Plymouth, MN   55447, for plaintiffs.

Joseph G. Schmitt and Peter D. Gray, **NILAN JOHNSON LEWIS PA**, 120 South Sixth Street, Suite 400, Minneapolis, MN   55402, for defendants.

Plaintiff Deleski Insurance Agency, Inc. ("the Agency"), through its sole owner Jerry Deleski ("Deleski"), entered an agreement with Allstate Insurance Company ("Allstate") to serve as an Allstate insurance agent.  Plaintiffs sued Allstate and Allstate employee David Hewitt in state court alleging several state law claims arising out of the termination of this agency relationship with Allstate.  Defendants removed the matter to federal court.  Plaintiffs now move to remand to state court, and Allstate and Hewitt each move to dismiss all of Plaintiffs' claims against them.  Because Hewitt was fraudulently joined, the Court will deny Plaintiffs' motion to remand, grant Hewitt's motion to

dismiss, and exercise subject matter jurisdiction over the remaining claims.  The Court will deny in part and grant in part Allstate's motion to dismiss because Plaintiffs' breach of contract claim, Plaintiffs' breach of implied covenant of good faith and fair dealing claim, and a portion of the Agency's age discrimination claims are adequately pled.

## BACKGROUND

### I.    FACTUAL ALLEGATIONS

Deleski resides in Minnesota.  (Notice of Removal, Ex. B ("First Am. Compl.") ¶ 7, July 8, 2013, Docket No. 1.)  The Agency is incorporated in Minnesota and is wholly owned by Deleski.  (*Id.* ¶ 8.)  Allstate is incorporated and operates its corporate offices in Illinois.  (*Id.* ¶ 9.)  Hewitt is a resident of Minnesota.  (*Id.* ¶ 10.)

Between 1973 and 2000, Deleski was employed as an insurance agent for Allstate. (*Id.* ¶ 12.)  In 1999, Allstate began the process of terminating its employer-employee relationships with its insurance agents in favor of creating independent contractor relationships with insurance agents who would own an economic interest in their respective books of insurance business.  (*Id.* ¶ 13.)  In the summer of 2000, in the wake of Allstate's transition to independent-contractor agents, Deleski incorporated the Agency. (*Id.* at ¶ 18.)  Subsequently, Deleski, on behalf of the agency, entered an Allstate R3001C Exclusive Agency Agreement with Allstate.  (*Id.* ¶ 19.)  Deleski was designated as the Agency's "Key Person" under the Agreement.  (*Id.* ¶ 20; Notice of Removal, Ex. C ("Agency Agreement") ¶ II.E.)  Under the Agency Agreement, Plaintiffs were to be independent contractors for Allstate.  (First Am. Compl. ¶¶ 22–25; Agency Agreement

¶ I.D.) The Agency Agreement also set out the methods by which the Agreement could be terminated.  In relevant part, the Agreement states:

This Agreement may be terminated:

1.   At any time by mutual agreement of the parties in writing;

2.   By either party, with or without cause, upon providing ninety (90) days prior written notice to the other, or such greater number of days as is required by law.  Once written notice of termination has been given by either party, Agency will, immediately upon request of the Company, cease to act or to represent itself in any way as an agent or representative of the Company, but it will receive compensation pursuant to Section XV. from the Company for the period up to and including the specified termination date; or

3.   Alternatively, by the Company, with cause, immediately upon providing written notice to Agency.  Cause may include, but is not limited to, breach of this Agreement, fraud, forgery, misrepresentation or conviction of a crime.  The list of examples of cause just stated shall not be construed to exclude any other possible ground as cause for termination.

(Agency Agreement ¶ XVII.)

During the Agency's tenure as an independent contractor for Allstate, Allstate used an "Expected Results Program" to evaluate agency performance in several business results criteria areas.  (*Id.* ¶ 41.)  On January 31, 2012, Deleski received a letter from Defendant Hewitt, a Territory Sales Leader for Allstate, stating that Allstate was terminating his Allstate R3001C Exclusive Agency Agreement, effective April 30, 2012. (*Id.* ¶ 79, Ex. B.)  The letter cited "reasons that include not achieving business objectives" as the basis for termination.  (*Id.* ¶ 80, Ex. B.)

- 3 -

In February 2012, Deleski received a phone call from Hewitt.  (*Id.* ¶ 96.)  During this call, Deleski informed Hewitt that another Allstate agent ("the prospective buyer") was prepared to buy the Agency's economic interest in its book of business.  (*Id.* ¶ 97.) Hewitt told Deleski that he would discuss the sale with the prospective buyer.  (*Id.*) Plaintiffs allege that the prospective buyer was well qualified to buy the Agency's book of business.  (*Id.* ¶ 98.)

Twenty minutes after Deleski's February 2012 phone conversation with Hewitt, the prospective buyer called Deleski to tell Deleski that he was no longer interested in buying the Agency's book of business.  (*Id.* ¶ 99.)  Plaintiffs allege "[u]pon information and belief" that Hewitt interfered with the potential sale during this twenty-minute window of time.  (*Id.* ¶ 100.)  Plaintiffs also allege that during the February 2012 phone conversation Hewitt informed Deleski that Allstate "prefers outside buyers" to existing Allstate agents for sales of books of business and stated that he would assist Deleski in finding an outside buyer.  (*Id.* ¶¶ 103-04.)  But, Plaintiffs allege that Hewitt never contacted Deleski about any potential outside buyers.  (*Id.* ¶ 105.)

During the course of these events, Deleski developed the belief that he was being wrongfully terminated, in part because of his opinion that Allstate's reason for the termination equated to termination for failure to meet a quota for the sale of life insurance policies, which is prohibited under Minnesota law.  (*Id.* ¶¶ 81–84, 108.)  In March 2012, Deleski complained to the Minnesota Department of Commerce about the circumstances surrounding Allstate's attempt to terminate the Agency Agreement.  (*Id.* ¶ 108.)

Despite doubts about the legality of the termination, Deleski continued to follow Allstate's instructions for closing the Agency.  (*Id.* ¶¶ 108–16.)  Deleski packed up the Agency's client files, removed all "Allstate" signs from the Agency's office, terminated the office lease and the majority of the Agency's employees, and sent letters to clients informing them that Allstate was terminating the Agency's contract.  (*Id.* ¶¶ 112–16.)

On Friday, April 27, 2012, at the direction of Allstate, movers arrived at the Agency and removed all of Plaintiffs' client files.  (*Id.* ¶ 118.)  That afternoon, Deleski received a phone call and letter from Hewitt informing Deleski that Allstate was rescinding its January 31, 2012 Notice of Termination of the Agency Agreement upon direction from Allstate's legal department and directing Deleski to continue to operate the Agency commencing May 1, 2012.  (*Id.* ¶¶ 120, 122, Ex. C.)  Later that afternoon, Deleski received a second letter via email from Hewitt stating:

> As we discussed and as was communicated to you in writing today, Allstate rescinded the Notice of Termination of your R3001 Exclusive Agency Agreement that you received on January 31, 2012 such that your Agreement would not be terminated effective April 30, 2012 pursuant to that notice. You have indicated, however, that you are prepared to and desire to still proceed with the termination of your R3001 Agreement effective April 30, 2012. Allstate will process the termination of your agreement in accordance with this request.

(*Id.* ¶ 122, Ex. D.)  Contrary to this second letter, Deleski had not indicated to Hewitt that he wanted to proceed with the Agency Agreement termination.  Deleski responded to Hewitt's email indicating as such.  (*Id.* ¶ 126.)

On Monday April 30, 2012, an Allstate employee arrived at Deleski's office and completed the closing of the Agency by forwarding the Agency's phones to Allstate and

placing a sign on the door stating that the Allstate location was closed.  (*Id.* ¶¶ 127–29.)
That afternoon, Deleski received a phone call from Paul Hanson at the Minnesota
Department of Commerce asking how things were going with Allstate, and Deleski
informed Hanson that an Allstate employee had just closed his office.  (*Id.* ¶ 130.)
Hanson responded that he understood that Allstate was not going to close the Agency's
office.  (*Id.* ¶ 130.)  At 5:30 that evening, Deleski received a voicemail message from
Hewitt stating that the termination of the Agency Agreement "had once again been
rescinded" and that Deleski needed to go back to work the following day. (*Id.* ¶ 131.)  At
that point, however, Plaintiffs had no office, employees, phones, or files and their
customers had all been informed that Allstate was terminating their contract. (*Id.* ¶¶ 132–
33.)

On May 7, 2012, Deleski received a letter dated May 4, 2012 from Hewitt stating:
"As you know, Allstate has rescinded the termination notice you received in January.
Your R3001 Agreement was **not** terminated effective April 30, 2012 and so your R3001
Agreement is still in effect.  Therefore, our expectation is that you will continue to
operate your agency per the Agreement."  (*Id.* ¶ 134, Ex. F (emphasis in original).)
Deleski did not receive any communications from Allstate or Hewitt after receiving the
May 4, 2012 letter.  (*Id.* ¶ 139.)

Plaintiffs allege that shortly after Allstate claimed to rescind the termination of the
Agency Agreement, "Allstate distributed Plaintiffs' book of business to two, much
younger agents of Allstate."  (*Id.*)  Plaintiffs allege that the new agents did not have to
pay Allstate for the book of business and that "Allstate financially benefitted at the

expense of Plaintiffs by, *inter alia*, eliminating the Deleski Agency and distributing its book of business to the younger agents." (*Id.* ¶ 140.) Plaintiffs also allege that "Hewitt personally profited from the distribution of the Deleski Agency's book of business to the two younger agents in that, *inter alia*, he earned a bonus for bringing in new agents to Defendant Allstate." (*Id.* ¶ 141.) Further, Plaintiffs allege that Allstate wrongfully informed customers attempting to contact Deleski that Deleski "'had retired,'" that he was "'terminated' (and insinuating that he was terminated for doing something wrong)," that he "'was not producing and was just collecting his renewals,'" and that he "'was content to just sit back and service his accounts.'" (*Id.* ¶ 142.) Furthermore, Plaintiffs allege that someone acting on behalf of Allstate created an internet listing for "'Allstate Insurance Company – Jerry Deleski'" with a phone number of one of the younger agents to which Allstate distributed Plaintiffs' book of business. (*Id.* ¶ 144.)

## II.    PROCEDURAL HISTORY

On April 29, 2013, Plaintiffs filed a charge of discrimination with the Minnesota Department of Human Rights setting forth a claim of age discrimination against Allstate. (*Id.* ¶ 158.) Subsequently, Plaintiffs sued Allstate and Hewitt in state court. (Notice of Removal ¶ 1.) Plaintiffs' First Amended Complaint includes claims against Allstate for age discrimination in violation of Minn. Stat. §§ 363A.08 and 181.81, breach of contract, breach of the implied covenant of good faith and fair dealing, trade libel, and deceptive trade practices in violation of Minn. Stat. § 325D.44. Additionally, Plaintiffs bring a claim for tortious interference with a prospective economic advantage against Hewitt and

an action for equitable accounting against both Defendants.   (First Am. Compl. at

¶¶ 147–217).   After being served with the First Amended Complaint, Defendants filed a

notice of removal with the Court alleging that subject matter jurisdiction based on

diversity of citizenship is proper because Hewitt was fraudulently joined.   (Notice of

Removal ¶ 16.)

## ANALYSIS

## I.   PLAINTIFFS' MOTION TO REMAND

Plaintiffs move to remand this matter to state court arguing that the Court lacks

subject matter jurisdiction because there is not complete diversity between all plaintiffs

and all defendants, as Plaintiffs and Defendant Hewitt are all residents of Minnesota.

Because Hewitt was fraudulently joined, the Court will dismiss Plaintiffs' claims against

Hewitt and deny Plaintiffs' motion to remand.

### A.   Standard of Review

A motion for remand challenges the Court's subject matter jurisdiction and

requires the Court to examine whether it has the authority to decide the claim.   *See Uland*

*v. City of Winsted*, 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008).   A defendant may

remove a civil action to federal court only if the action could have been filed originally in

federal court.   *See* 28 U.S.C. § 1441(b); *Gore v. Trans World Airlines*, 210 F.3d 944, 948

(8th Cir. 2000).   The party seeking removal bears the burden of establishing federal

subject matter jurisdiction by a preponderance of the evidence.   S*ee V S Ltd. P'ship v.*

*Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).   "[A]ll doubts about

federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 911 (8th Cir. 2009).

### B.    Fraudulent Joinder

Here, Defendants sought to remove Plaintiffs' suit on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).   In general, for an action to be removed on the basis of diversity jurisdiction, complete diversity must exist when the state complaint and the petition for removal are filed.  *See Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011).  When a plaintiff joins a non-diverse defendant to its state case, the removing defendants, in the absence of a substantial federal question, can only avoid remand by showing that the non-diverse party was fraudulently joined.  *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003).

"The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims."  *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012), *as corrected* (Nov. 28, 2012), *cert. denied*, 133 S. Ct. 2358 (2013).  "Joinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'"  *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010) (quoting *Filla*, 336 F.3d at 811).  The defendant must "do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion.  In this analysis,

[courts] do not focus on the artfulness of the plaintiff's pleadings." *Knudson*, 634 F.3d at 980 (citation omitted).

### C.    Tortious Interference with Prospective Advantage

Defendants must show there is no reasonable basis for the imposition of liability against Hewitt under state law to avail themselves of the fraudulent joinder doctrine and avoid remand to state court.  Therefore, Defendants must show that Plaintiffs' tortious interference with prospective advantage claim lacks any reasonable basis.[1]

"Tortious interference with prospective advantage 'protects an interest in the reasonable expectation of economic advantage.'"  *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 826 N.W.2d 816, 826 (Minn. Ct. App. 2013) (quoting *Wild v. Rarig*, 234 N.W.2d 775, 790 n.16 (Minn. 1975)), *review granted* (Minn. Apr. 16, 2013).  "The elements of tortious interference with prospective advantage are (1) 'intentionally and improperly interfer[ing] with another's prospective contractual relation' (2) by either '(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.'"  *Id.* (alteration in original) (quoting *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 633 (Minn. 1982)).

---

[1] The First Amended Complaint also contains a claim for an equitable accounting against Hewitt, but Plaintiffs withdrew this claim without prejudice and concede the tortious interference claim is the primary claim to consider on the motion to remand.  (Pls.' Mem. in Opp. to Def. Hewitt's Mot. to Dismiss at 16, Aug. 5, 2012, Docket No. 23; Pls.' Mem. in Supp. of Mot. to Remand at 8 n.4, July 24, 2013, Docket No. 20.)

Importantly, any alleged interference must be "improper" before liability can attach. *Moore v. Hoff*, 821 N.W.2d 591, 596 (Minn. Ct. App. 2012). Interference is improper "if it is without legal justification."[2] *Nordling v. N. States Power Co.*, 478 N.W.2d 498, 506 (Minn. 1991). "Generally, a defendant's actions are justified if it pursues its legal rights via legal means." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008). Therefore, interference cannot be improper where a party lawfully exercises a contractual right to interfere. *See R.A., Inc. v. Anheuser-Busch, Inc.*, 556 N.W.2d 567, 571 (Minn. Ct. App. 1996). Where a company has a right to interfere with a contract, "a company officer, agent or employee is privileged to interfere with or cause a breach of [that contract], if that person acts in good faith, whether competently or not, believing that his actions are in furtherance of the company's business." *Nordling*, 478 N.W.2d at 507. An employee's privilege to interfere may be lost "if the defendant's actions are predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff." *Id.*

In this case, Plaintiffs allege that Hewitt tortuously interfered with the prospective sale of the Agency's book of business to the prospective buyer and that the prospective buyer did not purchase the book of business because of Hewitt's interference. Under the Allstate R3001C Exclusive Agency Agreement, Allstate retained the exclusive right to

---

[2] The parties dispute whether lack of justification is an element of tortious interference or whether justification is an affirmative defense that must be proven by Defendants. Even if justification is an affirmative defense, an affirmative defense that is apparent on the face of the complaint can provide the basis to find that liability cannot reasonably attach to Hewitt. *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982–83 (8th Cir. 2008).

approve or disapprove the sale of Plaintiffs' book of business.  (Agency Agreement ¶ XVI.B.)  Therefore, if Hewitt was acting on behalf of Allstate at the time of the alleged interference, he could not have tortiously interfered with Plaintiffs' prospective sale of the book of business.  *See Nordling*, 478 N.W.2d at 506; *Anheuser-Busch*, 556 N.W.2d at 571.  However, a tortious interference claim could be maintained against Hewitt in his personal capacity if he acted outside the scope of his duties while allegedly interfering with the prospective sale.  *Nordling*, 478 N.W.2d at 506.

There is nothing in the preliminary record of this matter leading to a reasonable inference that Hewitt acted outside the scope of his employment.  Plaintiffs assert that Hewitt's actions were motivated by prospective personal gain and that Hewitt received some sort of bonus or other favorable treatment by Allstate as a result of his alleged interference with the sale of Plaintiffs' book of business.  Despite this allegation, there is nothing in the record to suggest that Hewitt did not act "in good faith  . . . believing that his actions [were] in furtherance of the company's business" or that Hewitt's actions were predominantly motivated by "personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff."  *Nordling*, 478 N.W.2d at 507.

Viewing all the facts asserted in the First Amended Complaint as true, there is nothing to support a reasonable inference that Hewitt acted outside the scope of employment as an Allstate manager or that Hewitt improperly interfered with the sale of Plaintiffs' book of business.  Based on this finding, there is no reasonable basis for the imposition of liability against Hewitt under state law, and the Court will deny Plaintiffs' motion to remand and grant Hewitt's motion to dismiss the tortious interference claim.

## II.    ALLSTATE'S MOTION TO DISMISS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true to determine if the complaint states "'a claim to relief that is plausible on its face.'" *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Finally, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

### B.    Age Discrimination

Plaintiffs allege that Allstate discriminated against Deleski and the Agency based on Deleski's age in violation of Minn. Stat. §§ 363A.08, subd. 2, and 181.81, subd. 1(a).

Allstate argues that neither Deleski nor the Agency are protected under these statutes and that the claim under Minn. Stat. § 363A.08 is untimely.

### 1.     Minnesota Human Rights Act

#### (a)     Timeliness

Under the Minnesota Human Rights Act ("MHRA"), an aggrieved person must file an administrative charge of discrimination or a civil action alleging an unfair discriminatory practice within one year of the occurrence of the practice.  Minn. Stat. § 363A.28, subd. 3.  A claim for an unfair discriminatory practice accrues on the date the adverse employment action is communicated to the employee.  *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005).  Therefore, "in an unfair employment discrimination claim for job termination where an unequivocal, unconditional notice of termination is given, the statute of limitations begins to run from the time the notice of termination is received by the employee."  *Turner v. IDS Fin. Servs., Inc.*, 471 N.W.2d 105, 108 (Minn. 1991).

Plaintiffs filed their charge of discrimination with the Minnesota Department of Human Rights setting forth their claim of age discrimination on April 29, 2013.  While the charge was not filed within one year of the January 31, 2012 Notice of Termination, Allstate rescinded this notice of termination and reinstated the Agency Agreement on April 27, 2012.  Allstate attempted to reinstate the notice of termination that afternoon based on Deleski's consent, but Deleski informed Allstate that he never told Allstate that he wanted to move forward with the termination.  Yet on April 30, 2012, Allstate

proceeded to close Plaintiff's office, effectively terminating Plaintiffs ability to perform

under the Agency Agreement.   Therefore, the Court finds that the adverse employment

action was communicated to Deleski on April 30, 2012, and Plaintiffs timely filed their

charge of discrimination on April 29, 2013, within the one-year period.

### (b)   Merits

Minnesota  Statutes  §  363A.08,  a  portion  of  the  MHRA,  defines  unfair

discriminatory practices relating to employment.   It provides, in relevant part:

> Except when based on a bona fide occupational qualification, it is an unfair
> employment  practice  for  an  employer,  because  of  . . .  age  to:  . . .
> (2) discharge an employee; or (3) discriminate against a person with respect
> to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or
> privileges of employment.

Minn. Stat. § 363A.08, subd. 2.   A person aggrieved by a violation of this provision can

bring a claim under the MHRA.   Minn. Stat. § 363A.28, subd. 1.   The parties dispute

whether Deleski or the Agency is entitled to relief under either Minn. Stat. § 363A.08.

subd. 2(2) or subd. 2(3).

In order for Deleski or the Agency to state a claim under Minn. Stat. § 363A.08,

subd. 2, they must have been, or sought to have been, "employees" of Allstate.  *See*

*Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254,

261–62  (Minn.  Ct.  App.  1996)  (requiring  "employee"  status  to  state  a  claim  for

discriminatory discharge based on age under a previous, but substantially similar, version

of Minn. Stat. § 363A.08).   Under the MHRA, an "employee" is "an individual who is

employed by an employer and who resides or works in this state.   Employee includes a

commission salesperson, as defined in section 181.145, who resides or works in this state."   Minn. Stat. § 363A.03, subd. 15.   Plaintiffs argue that they both qualify as a "commission salesperson" which is defined as "a person who is paid on the basis of commissions for sales and who is not covered by sections 181.13 and 181.14[3] because the person is an independent contractor." *Id.* § 181.145, subd. 1.

In order to fall within the definition of "employee" as a "commission salesperson" a person must receive commission payments directly from their purported employer. *Midwest Sports Mktg.*, 552 N.W.2d at 262 (holding that owners of sales agency were not "commission salespersons" of a manufacturer that the sales agency contracted to represent because the owners did not receive commissions directly from the manufacturer).   The First Amended Complaint does not allege that Deleski was paid commissions directly by Allstate.   To the contrary, the Agency Agreement states that "[a]ll commissions will be paid solely to the Agency, except as described in Section XIX below [addressing payment upon dissolution]."   (Agency Agreement ¶ XV.A.) Therefore, Plaintiffs have only alleged facts leading to the reasonable inference that the Agency, not Deleski, was an employee of Allstate under the MHRA's definitions. Plaintiffs have not alleged facts that could plausibly entitle Delseki, himself, to relief under Minn. Stat. § 363A.08, subd. 2.

---

[3] Minnesota Statutes § 181.13 provides a penalty for an employer's failure to promptly pay wages and commissions to a discharged employee and Minn. Stat. § 181.14 provides that an employee who quits or resigns employment is entitled to the prompt payment of wages or commissions earned.

While Plaintiffs have alleged sufficient facts to support a reasonable inference that the Agency was an employee of Allstate under the MHRA, in order to state a claim under Minn. Stat. § 363A.08, subd. 2, Plaintiffs must also allege that the Agency is an "aggrieved" person under this provision to state a claim.

In *Krueger v. Zeman Construction Company*, 781 N.W.2d 858 (Minn. 2010), the Minnesota Supreme Court addressed who could be an "aggrieved" person under Minn. Stat. § 363A.17(3), the MHRA's provision regarding business discrimination. In that case, Krueger and an LLC wholly owned by Krueger sued Zeman Construction Company ("Zeman") for unlawful business discrimination in the performance of a contract between Zeman and the LLC. 781 N.W.2d at 860. Krueger and the LLC alleged that Zeman unlawfully subjected Krueger to discrimination based on her sex during the performance of the contract between Zeman and the LLC. *Id.* Both Krueger and the LLC brought suit under the MHRA's business discrimination provision which states:

> It is an unfair discriminatory practice for a person engaged in a trade or business . . . to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of a person's race, national origin, color, sex, sexual orientation, or disability.

Minn. Stat. § 363A.17(3). Zeman challenged Krueger's ability to state a claim under the statute because she was not a party to the contract between Zeman and the LLC. *Krueger*, 781 N.W.2d at 860.

In deciding whether Krueger had standing to sue under Minn. Stat. § 363A.17(3), the court first noted that a "a 'person' can bring a claim under the MHRA if 'aggrieved by a violation of this chapter" and that "a 'person' includes a partnership, association, or

corporation, among others." *Id.* at 862 (quoting Minn. Stat. §§ 363A.28, subd. 1 and 363A.03, subd. 30).   The court explained that a person is "aggrieved" when he or she "has suffered the denial or infringement of a legal right." *Id.*   The court then held that Krueger could not state a claim for business discrimination in the performance of the contract between Zeman and LLC because the Krueger was not a party to the contract, therefore she did not suffer an infringement of a legal right under the statute. *Id.* at 864–66.   But in reaching this holding, the court stated that the LLC could state a claim for business discrimination under Minn. Stat. § 363A.17(3) based on Zeman's alleged sex discrimination against Krueger. *Id.* at 864.   The court reasoned that the LLC "had a statutory right to perform the contract without being subject to discrimination against its employees" and that discrimination against Krueger was a violation of the statute. *Id.*

In light of the court's reasoning in *Krueger* and the similarity of the statute at issue here, the Court finds that the Agency had an analogous right to continue its employment with Allstate "without being subject to discrimination against its employees." *Id.* Sections 363A.17(3) and 363A.08, subd. 2, each state that it is an unfair discriminatory practice to take certain actions because of certain enumerated protected characteristics. Neither statutory provision limits the definition of an unfair discriminatory practice to actions taken because of the employee's or contracting party's **own** protected characteristic.  Therefore, just as the LLC in *Krueger* had a right to perform its contract with Zeman without being subject to discrimination against its employees "because of a person's . . . sex" under § 363A.17(3), the Agency had a right to continue its employment relationship with Allstate without being subject to discrimination against its employees

"because of . . . age" under  § 363A.08, subd. 2.  Because of this right, the Court finds

that Plaintiffs have pled facts leading to a reasonable conclusion that the Agency is an

aggrieved person under Minn. Stat. § 363A.08, and the Court will deny Allstate's motion

to dismiss the Agency's age discrimination claim under Minn. Stat. § 363A.08, subd. 2(2)

and (3).

### 2.      Minnesota Statutes § 181.81

Plaintiffs also allege that Allstate unlawfully discriminated against the Agency and

Deleski in violation Minn. Stat. § 181.81, subd. 1(a).   Under Minn. Stat. § 181.81,

subd. 1(a), "[i]t is unlawful for any private sector employer to refuse to hire or employ, or

to discharge, dismiss, reduce in grade or position, or demote any individual on the

grounds that the individual has reached an age of less than 70."  Any person aggrieved by

a violation of this provision may bring a civil claim for redress.  Minn. Stat. § 181.81,

subd. 2(b).

Based on a plain reading of the statute, the Court finds that, with respect to claims

for unlawful discharge, the provision limits itself to employment relationships, as defined

by the definition of "employer" and "employee" found in Minn. Stat. § 363A.03.  *See*

Minn. Stat. § 181.81, subd. 1(d).  Further, the statutory language of Minn. Stat. § 181.81,

subd. 1(a), specifically limits its scope to persons who were discharged, not hired, or

demoted on the grounds that **they, themselves**, reached an age of less than 70.  *See Lecy*

*v. Sage Co.*, 460 N.W.2d 102, 105 (Minn. Ct. App. 1990) (finding that Minn. Stat.

§ 181.81, subd. 1, "provides a cause of action for a person who is involuntarily

discharged from employment based on their age when that person has not yet reached 70"). In this respect, Minn. Stat. § 181.81, subd. 1(a), varies significantly from Minn. Stat. § 363A.08, subd. 2, which, as noted above, does not require discrimination because of the employee's **own** age.

As discussed above, Plaintiffs have not pled facts to support a conclusion that Deleski was an "employee" of Allstate under the definitions set forth in Minn. Stat. § 363A.03. Further, Plaintiffs only allege that Allstate discriminated against them because of Deleski's age. Because the language of Minn. Stat. § 181.81, subd. 1(a), only provides a cause of action to employees that have been discriminated against because they, themselves, have reached an age of less than 70, and Plaintiffs only allege discrimination based on Deleski's age, Plaintiffs fail to state a claim on behalf of the Agency. Therefore, the Court finds that neither of the Plaintiffs state a claim for relief under Minn. Stat. § 181.81.

## C.    Breach of Contract

Count II of the First Amended Complaint alleges that Allstate breached the Agency Agreement by attempting to terminate it in a manner not permitted by the Agreement. Count II also alleges that Allstate further breached the non-terminated Agency Agreement by confiscating Plaintiffs' Allstate business, by barring Plaintiffs from selling their book of business, and by failing to pay consideration set forth in the Agreement. (First Am. Compl. ¶¶ 169–74.)

Under Minnesota law, "[i]n order to state a claim for breach of contract, the plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). A plaintiff's performance of a condition precedent is generally excused if it is unreasonably hindered or rendered impossible by the other party. *See Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984). Additionally, "a breach of contract occurs under those circumstances." *Id.* Whether a party unreasonably hindered performance is generally a factual issue for a jury to resolve. *Id.* The parties dispute whether Allstate breached the Agency Agreement and whether Plaintiffs performed the conditions precedent to Allstate's continued performance of its contractual duties.

First, the parties disagree as to whether Allstate ever breached the Agency Agreement. The Agency Agreement states that it can be terminated by mutual agreement in writing, by ninety-day notice with or without cause, or by cause upon written notice. (Agency Agreement ¶ XVII.) Accepting all the facts alleged in the First Amended Complaint as true, Allstate attempted to terminate the Agency Agreement between April 27 and 30, 2012 without mutual agreement, ninety-day notice, or cause upon written notice, as required by the Agreement's terms. Allstate rescinded its January 31, 2012 Notice of Termination on April 27, 2012, reinstating the Agency Agreement. Later that day, Allstate attempted to re-terminate the Agreement citing Deleski's mutual approval which Deleski asserts that he did not give. Nevertheless, on April 30, Allstate proceeded to close Deleski's office. Given these allegations, Plaintiffs have pled facts

more than sufficient to lead to a reasonable inference that Allstate breached the Agency Agreement in attempting to terminate it in a manner not allowed by the Agreement's own terms.

Because Plaintiffs sufficiently plead that the Agency Agreement was not properly terminated, Plaintiffs also sufficiently plead that Allstate breached the Agency Agreement by not continuing to perform its duties under the contract. Plaintiffs' allegations lead to the reasonable conclusion that Allstate breached the Agency Agreement by failing to pay commissions to Plaintiffs as set forth in the Agreement and by preventing the Agency from continuing to act as an Allstate agent.[4]

Second, the parties dispute whether Plaintiffs performed the conditions precedent to Allstate's continued performance, namely the payment of commissions under the Agency Agreement, after Allstate attempted to terminate the Agency Agreement on April 30. But, Plaintiffs plead sufficient facts to lead to a reasonable inference that Allstate unreasonably hindered Plaintiffs' continued performance of the Agency Agreement, which would excuse Plaintiffs' continued performance under the Agreement. *See Zobel & Dahl Constr.*, 356 N.W.2d at 45. Allstate caused Plaintiffs to effectively close their office in compliance with the Notice of Termination. Allstate then confiscated all of Plaintiffs' files and rerouted Plaintiffs' phone lines after it tried to rescind its Notice

---

[4] Plaintiffs also allege that Allstate breached the Agency Agreement by barring Plaintiffs from selling their book of business to a third party. As discussed above, Allstate had the exclusive right to approve or disapprove a sale. (Agency Agreement ¶ XVI.B.) Therefore, Plaintiffs fail to state a breach of contract claim on these grounds.

of Termination on April 27.  Shortly thereafter, Allstate distributed Plaintiffs' book of business to other agents.

On this preliminary record, the alleged facts all lead to a reasonable inference that Allstate breached the Agency Agreement and that the performance of any conditions precedent to Allstate's continued performance were excused by Allstate's own actions. Therefore, the Court finds that Plaintiffs' First Amended Complaint states a breach of contract claim that is plausible on its face.  Court will deny Allstate's motion to dismiss this claim.

### D.       Breach of Implied Covenant of Good Faith and Fair Dealing

In Count III, Plaintiffs allege that Allstate breached the implied covenant of good faith and fair dealing.  "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract."[5]  *In re Hennepin Cnty. 1986 Recycling*

---

[5]     Allstate cites *Hunt v. IBM Mid American Employees Federal Credit Union*, 384 N.W.2d 853, 858 (Minn. 1986), for the proposition that Minnesota recognizes an exception to the universal application of the implied covenant of good faith for employment contracts.  But Allstate points to no binding precedent that prevents the Court from applying the implied covenant of good faith to the independent-contractor relationship at issue here.  Further, most of the cases that Allstate cites hold that the implied covenant of good faith does not apply to prevent the bad-faith **termination** of an agency relationship terminable at will.  *See, e.g.*, *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 524–25 (Mo. Ct. App. 2007) (finding that implied covenant of good faith does not apply to the termination of at-will agency agreements); *Tvedt v. Farmers Ins. Grp. of Cos.*, 91 P.3d 1, 7–8 (Mont. 2004) (holding that at-will termination clause precluded a finding that insurance company breached the implied covenant of good faith in terminating an independent contractor); *James H. Washington Ins. Agency v. Nationwide Mut. Ins. Co.*, 643 N.E.2d 143, 149 (Ohio Ct. App. 1993) (finding that Ohio law does not recognize an implied covenant of good faith in the termination of an at-will agreement).  Similarly, Minnesota courts have refused to find an implied covenant of good faith in employment contracts out of

(Footnote continued on next page.)

*Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) (quoting *Zobel & Dahl Constr.*, 356 N.W.2d at 45).  Although a plaintiff cannot recover on both breach of contract and breach of implied covenant of good faith theories, a plaintiff can plead both theories in the alternative.  *Columbia Cas. Co. v. 3M Co.*, 814 N.W.2d 33, 37 (Minn. Ct. App. 2012), *review denied* (Minn. June 19, 2012).

"To allege an implied covenant claim the [plaintiff] need not first establish an express breach of contract claim . . . ."  *In re Hennepin Cnty.*, 540 N.W.2d at 503.  To survive Allstate's motion to dismiss Plaintiffs must allege "sufficient facts which, if proven, would support an inference of bad faith."  *White Stone Partners, LP v. Piper Jaffray Cos.*, 978 F. Supp. 878, 885 (D. Minn. 1997).

As noted above, Plaintiffs allege sufficient facts to draw a reasonable inference that Allstate "unjustifiably hindered" Plaintiffs' performance of the Agency Agreement.  The events that Plaintiffs allege to have occurred between April 27 and 30, 2012 also support a reasonable inference of bad faith on the part of Allstate.  Therefore, the Court will deny Allstate's motion to dismiss Count III.

---------------------------------------

(Footnote continued.)

reluctance to disturb an employer's ability to terminate an employment relationship at will. *Hunt*, 384 N.W.2d at 858.

Here, Plaintiffs do not base their claim on the assertion that Allstate terminated them in bad faith; instead, Plaintiffs argue that Allstate prevented their continued performance of the Agency Agreement in bad faith.  Therefore, the rational for applying an employment contract exception to the universal application of the implied covenant of good faith is not applicable here.

### E.   Defamation Per Se

Count V of Plaintiffs' First Amended Complaint is entitled "Trade Libel." Plaintiffs concede that they have not stated a claim for trade libel. (*See* Pls.' Mem. in Opp. to Allstate's Mot. to Dismiss at 33, Aug. 5, 2013, Docket No. 22.)   Instead, Plaintiffs argue that Count V states a claim for defamation per se.

"To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'" *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919–20 (Minn. 2009) (alterations in original) (quoting *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)).   "In determining whether a statement is defamatory, the court must look to the nature and obvious meaning of the language in its plain and ordinary sense, construing it as a whole, including innuendos reasonably laid from the statement." *Phipps v. Clark Oil & Ref. Corp.*, 396 N.W.2d 588, 594 (Minn. Ct. App. 1986), *aff'd*, 408 N.W.2d 569 (Minn. 1987).   Further, "Minnesota law requires that a claim for defamation must be pled with a certain degree of specificity. At a minimum, the plaintiff must allege who made the allegedly libelous statements, to whom they were made, and where." *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1011 (8th Cir. 2005) (internal citations and quotation marks omitted), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

"If the defamation 'affect[s] the plaintiff in his business, trade, profession, office or calling,' it is defamation per se and 'thus actionable without any proof of actual

damages.'"   *Bahr*, 766 N.W.2d at 920 (quoting *Stuempges*, 297 N.W.2d at 255).

However, in order to show that a statement tends to lower the plaintiff in the estimation

of the community, the words "must be peculiarly harmful to the person in his business."

*Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn. 1977).   "[T]he remarks must relate

to the person in his professional capacity and not merely as an individual without regard

to his profession."   *Id.*

      Plaintiffs do not allege sufficient facts to meet this standard.   Plaintiffs allege that

Allstate informed unnamed persons that Deleski "'had retired,'" that he "'retired and left

the business,'" that he was "'terminated,'" that he "'was not producing and was just

collecting his renewals,'" and that he "'was content to just sit back and service his

accounts.'"   (First Am. Compl. ¶ 142.)   Plaintiffs allege that all these statements were

false, but Plaintiffs do not allege "who made the allegedly libelous statements, to whom

they were made, and where."   *Pope*, 406 F.3d at 1011 (internal quotation marks omitted).

Further, Plaintiffs do not allege that the statements tend to lower Plaintiffs' reputation and

estimation in the community.   The most damaging statement to Deleski's reputation

alleged by Plaintiffs appears to be that Deleski "was 'terminated' (and insinuating that he

was terminated for doing something wrong)."   (First Am. Compl. ¶ 142.)   However,

again Plaintiffs do not allege specific facts to show when the statement was made, to

whom, and in what context.   Based on these deficiencies, the Court will grant Allstate's

motion to dismiss Count V, but will dismiss the claim without prejudice and allow

Plaintiffs leave to amend.

F.      Deceptive Trade Practices

Plaintiffs allege in Count VI that Allstate engaged in deceptive trade practices in violation of Minn. Stat. § 325D.44.   The Uniform Deceptive Trade Practices Act ("UDTPA") generally protects consumers from deceptive or confusing advertising.   *See* Minn. Stat. § 325D.44, subd. 1.   The only remedy available under the UDTPA is injunctive relief which may be granted for any "person likely to be damaged by a deceptive trade practice of another."   *Id.* § 325D.45, subd. 1; *Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999).   In order to state a claim for injunctive relief under the UDTPA, a plaintiff must allege facts sufficient to support an inference of a likelihood of future harm.   *See Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003).   If they fail to do so, their claim for injunctive relief becomes moot.   *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012); *Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1101 (D. Minn. 1999) (finding that the plaintiff's claim under the UDTPA was moot after the defendant ceased the allegedly offending advertising), *vacated in part on other grounds*, 290 F.3d 1364 (Fed. Cir. 2002).

Plaintiffs base their UDTPA claim on the allegation that someone acting on behalf of Allstate created an internet listing for "Allstate Insurance Company – Jerry Deleski" with a phone number of one of the younger agents to whom Allstate distributed Plaintiffs' book of business.   While Plaintiffs appear to allege that Allstate engaged in deceptive trade practices in the past, Plaintiffs' First Amended Complaint does not allege that the internet listing still exists or that Plaintiffs are likely to be harmed in the future by

deceptive practices on behalf of Allstate.   Therefore, the Court will grant Allstate's motion to dismiss Count VI.

### G.   Equitable Accounting

Lastly, in Count VII, Plaintiffs assert a claim for an equitable accounting regarding commissions Plaintiffs would have earned after May 1, 2012, the monies Allstate saved after May 1, 2012, by distributing the Allstate book of business to younger agents, and the monies Hewitt received relating to the distribution of Plaintiffs' book of business.   An equitable accounting is available primarily in two circumstances: (1) "when a fiduciary owes an equitable duty to account," and (2) "when the accounts at issue are exceedingly complicated."   *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 57 n.3 (Minn. 2012), *reh'g denied* (Apr. 13, 2012).   Moreover, an accounting is an extraordinary equitable remedy that requires a valid underlying claim. *Cox v. Mortgage Elec. Registration Sys., Inc.*, 794 F. Supp. 2d 1060, 1065 (D. Minn. 2011) *aff'd*, 685 F.3d 663 (8th Cir. 2012).

Allstate argues that the accounts at issue are not exceedingly complicated and Plaintiffs would have an opportunity to obtain the requested information through traditional discovery.   Based on these assertions, Plaintiffs agreed to withdraw this claim without prejudice.   (Pls' Mem. in Opp. to Def. Allstate's Mot. to Dismiss at 40.) Therefore, the Court will dismiss Count VII without prejudice as to Allstate.   The Court will dismiss Count VII with prejudice as to Hewitt because Plaintiff's underlying claim against Hewitt for tortious interference fails as a matter of law.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiffs' Motion to Remand [Docket No. 18] is **DENIED**.

2.     David Hewitt's Motion to Dismiss [Docket No. 8] is **GRANTED**. Plaintiffs' claims against David Hewitt for tortious interference (Count IV) and equitable accounting (Count VII) are **DISMISSED with prejudice**.

3.     Allstate Insurance Company's Motion to Dismiss [Docket No. 12] is **GRANTED in part** and **DENIED in part**, as follows:

     a.     The motion is **GRANTED** with respect to Jerry Deleski's claim for age discrimination brought under Minn. Stat. § 363A.08 and both Plaintiffs' claims for age discrimination brought under Minn. Stat. § 181.81 (Count I).  These claims are **DIMISSED with prejudice**.

     b.     The motion is **GRANTED** with respect to Plaintiffs' claim against Allstate for deceptive trade practices (Count VI). This claim is **DIMISSED with prejudice**.

     c.     The motion is **GRANTED** with respect to Plaintiffs' claims against Allstate for trade libel or defamation per se (Count V) and equitable accounting (Count VII).  These claims are **DISMISSED without prejudice**.

     d.     The motion is **DENIED** with respect to Deleski Insurance Agency, Inc.'s claim for age discrimination brought under Minn. Stat. § 363A.08 (Count I),

Plaintiffs' claim for breach of contract (Count II), and Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count III).

4.     Plaintiffs may file an amended complaint with respect to Count V within thirty (30) days from the date of this Order.

DATED:   December 30, 2013                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                   United States District Judge